UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAYCOL ESAU GARCIA-SOLORZANO (A 220-908-549),

Petitioner,

v.

WARDEN,

Respondent.

No. 1:26-cv-04219-DC-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a 21-year old citizen of Honduras, entered the United States on December 21, 2021, when he was 17 years old. ECF No. 9 at 5. After designation as an Unaccompanied Alien Child ("UAC") under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Petitioner was released from the custody of the U.S. Department of Health and Human Services Office of Refugee Resettlement (ORR) on January 23, 2022. ECF No. 1 at 9. Over four years later, on January 29, 2026, a U.S. Customs and Border Patrol agent encountered Petitioner in or near Fort Lauderdale, Florida. ECF No. 9 at 5. Upon discovering that Petitioner did not have lawful immigration status, immigration officials detained Petitioner and

initiated removal proceedings against him. Id. at 4-11. Petitioner has no known criminal history. Id. at 6.

Petitioner filed a petition for writ of habeas corpus on June 2, 2026. ECF No. 1. After appointment of counsel, Petitioner filed an amended petition claiming that his current detention violates his Fifth Amendment right to due process, his Fourth Amendment protection against unlawful seizure, and the Immigration and Nationality Act. ECF No. 7. Though Petitioner asserts that 8 U.S.C. § 1226(a) governs his detention (ECF No. 7 at 22), Respondent's answer and opposition claims that, because Petitioner entered the United States unlawfully, he is considered an "applicant for admission" subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v.

Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

**B. Statutory Immigration Framework**

"Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The relevant detention statutes at issue here are 8 U.S.C. §§ 1225(b)(2),1226(a), and 1232(c).

Under 8 U.S.C. § 1225, a noncitizen who arrives in the United States or is present in the U.S. but has not been admitted is treated as an applicant for admission. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Noncitizens determined to be inadmissible under certain specific grounds are covered by § 1225(b)(1) and subject to expedited removal unless they demonstrate a credible fear of persecution, after which they are detained pending adjudication of their application for asylum. 8 U.S.C. § 1225(b)(1). All other applicants for admission not covered by § 1225(b)(1) fall under § 1225(b)(2). Those subject to § 1225(b)(2) "shall be detained" while placed in removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

Noncitizens who are already present in the U.S. but are subject to removal proceedings may be detained pursuant to 8 U.S.C. § 1226(a). Unlike those detained under § 1225(b)(2), where detention is mandatory, those detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

The detention of "unaccompanied alien children" ("UAC") – minors under 18 years old who have no lawful immigration status in the United States and no parent or legal guardian in the United States available to provide care and custody (6 U.S.C. § 279) – is governed by the Trafficking Victims Protection Reauthorization Act ("TVPRA"), codified in 8 U.S.C. § 1232. UACs are placed in the custody of the Secretary of Health and Human Services in the "least restrictive setting that is in the best interest of the child" in consideration of any "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A) A UAC is only placed in a "secure facility" if there is a determination that "the child poses a danger to self or others or has been charged with having committed a criminal offense." Id. If the UAC, after turning 18 years

old, is transferred to the custody of the Department of Homeland Security, placement must still be in the "least restrictive setting available" after consideration of the noncitizen's danger to self, danger to the community, and risk of flight. 8 U.S.C. § 1232(c)(2)(B).

## III. Analysis

### A. Applicable Detention Statute

Respondent argues that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he entered the United States unlawfully. District courts nationwide, including this court, have overwhelmingly rejected this position. "These courts examined the text, structure, agency application, and legislative history of § 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, No. 1:25-cv-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). See also H.F. v. Albarran, No. 1:25-cv-1795 TLN EFB, 2025 WL 3691081, at *3 (E.D. Cal. Dec. 19, 2025); Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

Additionally, Petitioner was designated as a UAC under the TVPRA when he arrived in the United States.[1] ECF No. 1 at 9. The detention of UACs is governed by 8 U.S.C. § 1232(c)(2). The undersigned agrees with the district court's finding in F.S.S.M. v. Wofford that one cannot be simultaneously subject to both § 1225(b)(2) and § 1232(c)(2) because the detention schemes are facially incompatible. F.S.S.M. v. Wofford, 1:25-cv-01518-TLN-AC, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025). The TVPRA's requirement that UACs be placed in the least restrictive setting – including alternatives to detention such as placement with an individual or organizational sponsor or a supervised group home (8 U.S.C. § 1232(c)(2)(B) – is "in direct conflict with mandatory detention." F.S.S.M. v. Wofford, WL 3526671, at *4.

---

[1] Under the terms of a class action settlement agreement, the Department of Homeland Security is forbidden from re-assessing whether UACs still qualify for such status after turning 18 and/or reunifying with parents in the U.S. See J.O.P. v. U.S. Dep't of Homeland Security, 338 F.R.D. 33, 44, 64 (D. Md. 2019); J.O.P. v. US Department of Homeland Security, No. 8:19-cv-01944-SAG (D. Md. July 30, 2024) (solidifying class-wide injunction in settlement agreement).

Other than Respondent's statement in its opposition, there is nothing in the record suggesting that the government previously applied § 1225(b)(2) to Petitioner. Had he been deemed an applicant for admission under § 1225(b)(2), he would have been paroled pursuant to § 1182(d)(5)(A), rather than referred to and released from ORR custody. The record is clear that when the government apprehended Petitioner at the border, they did not classify him as an applicant for admission. "That Petitioner should now – approximately four years after entering the country and being released by ORR – be treated as an 'applicant for admission' defies logic." Salvador v. Bondi, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025). As Petitioner is subject to detention under § 1232, mandatory detention under § 1225(b)(2) does not apply.

**B. Due Process**

Even if Petitioner were subject to some form of mandatory detention, he may still raise an as-applied constitutional challenge to his detention by showing that "the application of the statute to a specific factual circumstance" is unconstitutional. Hoye v. City of Oakland, 653 F.3d 835, 857 (9th Cir. 2011). Here, Petitioner raises an as-applied challenge to his detention alleging that re-detention without a pre-deprivation hearing violated his procedural due process right. ECF No. 7 at 20-21.

In reviewing Petitioner's due process challenge, the Court turns first to the question of whether Petitioner has a protected liberty interest in freedom from detention. Numerous courts, including those in this district, have found that individuals paroled and/or released from ICE custody have protected interest in remaining out of custody. See R.D.T.M v. Wofford, No. 1:25-cv-01141-KES-SKO (HC), 2025 WL 2686866, at *4-5 (E.D. Cal. Sept. 18, 2025). See also P.A.H.E. v. Noem, No. 1:26-cv-01164-DJC-JDP, 2026 WL 451662, at *2 (E.D. Cal. Feb. 17, 2026) (citing Lopez v. Lyons, No. 2:25-cv-03174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner was released from ORR custody on January 23, 2022. For four years, Petitioner remained "at liberty relying on that determination." F.S.S.M. v. Wofford, WL 3526671, at *5. Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process

Clause to seek relief in his individualized circumstances.

Having so found, the undersigned applies the framework articulated in Mathews v. Eldridge, 424 U.S. 319 (1976) to determine whether Petitioner's re-detention violated his due process rights. See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**1. Private Interest**

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in maintaining his out-of-custody status. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner remained out of custody for four years, during which he developed strong ties to the community and a liberty interest in remaining free from detention. See ECF No. 1 at 13-29.

**2. Risk of Erroneous Deprivation**

"[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"). Petitioner was previously released and placed with a sponsoring family member pursuant to the TVPRA (ECF No. 1 at 9), meaning the Office of Refugee Resettlement necessarily already determined that Petitioner does not pose a risk of flight or danger to the community based on an individualized assessment of his circumstances. See 8 U.S.C. § 1232(c)(2) (directing the relevant authorities to consider "danger to self, danger to the community, and risk of flight" in determining the placement of UACs). The record does not contain evidence of any criminal history and Respondent has not presented any change in

circumstance that would indicate Petitioner is now a danger to the community. The risk of erroneous deprivation is therefore considerable. See F.S.S.M. v. Wofford, 2025 WL 3526671, at *6 (finding risk of erroneous deprivation considerable where "as here, Petitioner was previously released pursuant to a finding that he was neither dangerous nor a flight risk" under the TVPRA).

### 3. Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). Here, though, Respondent does not argue Petitioner is a flight risk or danger to the community. Moreover, the effort and cost required to provide Petitioner with procedural safeguards would be minimal.

All three Mathews factors weigh in favor of Petitioner. The undersigned therefore joins several district courts in concluding that a pre-deprivation hearing was required to satisfy due process. See Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Pinchi v. Noem, No. 25-cv-05632-RMI (RFL) 2025 WL 1853763, at *3–4 (N.D. Cal. July 4, 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The absence of such pre-deprivation hearing violates Petitioner's due process rights and warrants immediate release.

## IV. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED.
2. Respondent be ORDERED to immediately RELEASE Petitioner from custody.

a. At the time of release, Respondent shall be required to return all of Petitioner's documents and possessions.

b. Respondent shall not impose any additional restrictions on Petitioner unless such restrictions are deemed necessary at a future pre-deprivation hearing.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections which include, at a minimum

a. Pre-deprivation notice describing the change of circumstance(s) necessitating re-detention; and

b. A timely pre-deprivation hearing at which the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight even after consideration of alternatives to detention, and at which Petitioner shall be permitted to have his counsel present.

4. The order not address the circumstances under which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5. The Clerk of the Court be directed to serve California City Immigration Processing Center with a copy of any release order.

6. The Clerk of the Court be directed to enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 22, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 Garc4219.imm.frs